**26CG-CC00334**

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

**IN THE CIRCUIT COURT OF CAPE GIRARDEAU COUNTY**
**STATE OF MISSOURI**

**C.M., a minor, by and through Next Friend,**
**V.A. , V.A. and C.M.S., individually,**

**Plaintiff,**

**vs.**

**JACKSON R-2 SCHOOL DISTRICT,**

**Serve: Dr. Keenan Kinder**
**614 E. Adams**
**Jackson, MO 63755**

**DR. KEENAN KINDER, in his official capacity,**

**Serve: Dr. Keenan Kinder**
**614 E. Adams**
**Jackson, MO 63755**

**LONNY STOVER, in his official and individual capacities,**

**Serve: Lonny Stover**
**315 S. Missouri**
**Jackson, MO 63755**

**Defendants.**

**JURY TRIAL DEMANDED**

**Cause No.:**

**Division:**

## PETITION FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiffs C.M., a minor, by and through his next friend V.A., and V.A. and C.M.S., individually, and for their Petition against Defendants Jackson R-2 School District, Dr. Keenan Kinder, and Lonny Stover, state and allege as follows:

## I. PARTIES

1. Plaintiff C.M. is a minor and a resident of Cape Girardeau County, Missouri. He is currently seventeen (17) years of age and is enrolled as a student in the Jackson R-2 School District

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

at Jackson Senior High School. He brings this action by and through his next friend, step-mother, and legal custodian, V.A., pursuant to Rule 52.02 of the Missouri Rules of Civil Procedure. Because C.M. is a minor, Plaintiffs identify C.M. and his parents by initials.

2. Plaintiff V.A. is the step-mother and next friend of Plaintiff C.M. and a resident of Cape Girardeau County, Missouri. V.A. brings this action individually and as next friend of C.M.

3. Plaintiff C.M.S. is the natural father of Plaintiff C.M. and a resident of Cape Girardeau County, Missouri. C.M.S. brings this action individually and is legally obligated to support C.M.

4. Defendant Jackson R-2 School District ("the District") is a Missouri public school district organized and existing under Chapters 162 and 171, RSMo, and is a "body corporate and a political subdivision" of the State of Missouri, RSMo § 162.875. The District operates Jackson Senior High School, located in Cape Girardeau County, Missouri, and receives federal financial assistance. The District is a "person" subject to suit under 42 U.S.C. § 1983. Service of process may be had upon the District by serving the Superintendent, at 614 E. Adams, Jackson, Missouri 63755.

5. Defendant Dr. Keenan Kinder is the Superintendent of the Jackson R-2 School District and is the District's final policymaker with respect to the supervision, training, and discipline of District employees and the District's response to student-on-student violence and bullying. He is sued in his official capacity only, for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

6. Defendant Lonny Stover is a natural person and a resident of the State of Missouri. At all times relevant he was employed by the District as a classroom teacher at Jackson Senior

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

High School. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive relief.

## II. JURISDICTION, VENUE, AND NATURE OF THE ACTION

7. This Court has subject-matter jurisdiction under Article V, Section 14 of the Missouri Constitution and RSMo § 478.070. Missouri circuit courts exercise concurrent jurisdiction with the federal courts over claims arising under 42 U.S.C. § 1983. *Duvall v. Lawrence*, 86 S.W.3d 74 (Mo. App. E.D. 2002).

8. Venue is proper in Cape Girardeau County under RSMo § 508.010 because the events giving rise to this action occurred in Cape Girardeau County and Defendants reside or work there.

9. The amount in controversy exceeds the sum of $25,000, exclusive of costs and interest.

10. This action arises out of (a) a violent, unprovoked assault on Plaintiff C.M. by a fellow student that occurred inside a District classroom while Defendant Stover was the assigned supervising teacher; (b) Defendant Stover's deliberate failure to intervene or protect C.M.; (c) Defendant Stover's directive to the students involved that the assault was not to be reported to anyone (the "Fight Club" instruction); (d) the District's suspension of C.M. — the victim — for reporting the assault; and (e) the District's sustained, deliberate indifference to the bullying and harassment of C.M. that followed, and that continues to the present day.

11. Counts I through V assert claims under 42 U.S.C. § 1983. Counts VI through IX assert claims under Missouri law, joined pursuant to Rule 55.10 of the Missouri Rules of Civil Procedure. Plaintiffs plead all claims and all theories in the alternative, as permitted by Rules 55.10 and 55.15.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

## III. FACTS COMMON TO ALL COUNTS

**The Assault**

12. At all times relevant to the events alleged herein, Plaintiff C.M. was a sixteen (16) year old (seventeen (17) at relevant times of further bullying and harassment after the assault) student enrolled at Jackson Senior High School in the Jackson R-2 School District.

13. On or about May 19, 2026, during the final weeks of the 2025–2026 school year, C.M. was present in Defendant Lonny Stover's classroom at Jackson Senior High School during an assigned class period.

14. Defendant Stover was the teacher assigned by the District to that classroom for that period. He was the only school employee present and was the adult charged with the supervision, safety, and discipline of the students in that room. The District's own policies, and the duties imposed by RSMo §§ 160.261 and 160.775, required Defendant Stover to supervise the students in his classroom and to protect them from harm.

15. During that class period, another sixteen (16) year old student enrolled at Jackson Senior High School physically attacked C.M. without provocation, striking him about the head and body with his hands, elbows and feet and continuing the attack until Defendant Stover finally intervened due to C.M. losing consciousness from being placed in a strangulation hold by the attacking student.

16. The assault took place in Defendant Stover's presence, within his plain view, and in the classroom he was being paid to supervise.

17. Defendant Stover did not intervene. He did not move toward the students, did not attempt to restrain or separate the student that attacked C.M., did not summon assistance, did not

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

call for medical help, and took no other action to protect C.M. or to stop the attack. He permitted the attack to run its course.

18. As a direct and proximate result of the assault and Defendant Stover's failure to intervene, C.M. sustained serious physical injuries, including possible fracture to his orbital bone, a severe laceration to his arm, contusions and soft-tissue injury. C.M. required emergency medical treatment, but he was not provided with proper medical care until V.A. picked him up from school and took him to the emergency department of the nearest hospital where he was treated for his injuries. He has incurred hospital, physician, and related medical expenses, and will incur additional expenses in the future.

19. On information and belief, the attacking student's conduct involved the use of physical force with the intent to cause serious physical injury to C.M., and therefore constituted an "act of school violence" within the meaning of RSMo § 160.261.2 and/or the offense of assault in the second degree, RSMo § 565.060, and/or assault in the third degree, RSMo § 565.070.

20. RSMo § 160.261.2 required the District's administrators to report that act of school violence to all teachers at the attendance center and to other District employees with a need to know, and required the District's administrators to report the incident to the appropriate law enforcement agency as soon as reasonably practical. On information and belief, no such report to law enforcement was ever made.

**The "Fight Club" Instruction and the Suppression of Reporting**

21. Rather than protect C.M., obtain medical attention for him, or report the assault as the law required, Defendant Stover instructed the students involved, including C.M., that they were not to report the assault to anyone. He told the students, in substance and in words, that "what happens in Fight Club stays in Fight Club."

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

22. That instruction was issued by a teacher to minor students over whom he exercised authority, and it was reasonably understood by the students as a directive prohibiting them from reporting the assault to their parents, to school administrators, to school resource officers, or to law enforcement.

23. Defendant Stover's instruction was an affirmative act that made C.M. more vulnerable to further harm. It delayed the reporting of the assault, delayed and obstructed the investigation of the assault, delayed the medical and psychological care that C.M. required, insulated the attacking student from any consequence, and emboldened the attacking student and others to continue to target C.M.

24. Defendant Stover issued that instruction in bad faith and with a purpose to conceal his own failure to supervise and to protect himself from professional consequences, and not for any legitimate educational purpose.

**The District's Suspension of the Victim**

25. C.M. ultimately reported the assault to District officials on or about May 19, 2026 when a School Resource Officer visited him in the emergency department because prior to being taken to the hospital by V.A., C.M. had gotten some medical supplies to stop the bleeding from the laceration on his arm from the school's nurse and C.M. hinted to the nurse that something had happened.

26. Rather than treat C.M. as the victim of an unprovoked attack that occurred because his teacher failed to supervise, the District characterized the assault as a mutual "fight" and suspended C.M. from school two days beginning on May 19, 2026.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

27. The District suspended C.M. because he had reported the assault and because he refused to remain silent as Defendant Stover had instructed. The suspension was imposed in retaliation for C.M.'s protected speech and in violation of his right to procedural due process.

28. Before imposing the suspension, the District did not give C.M. or his parents adequate written notice of the charges, provide C.M. an adequate opportunity to present his account of the events, or provide a hearing. C.M. was not permitted to cross-examine or respond to the witnesses against him.

29. On information and belief, the attacking student received discipline less severe than it should have been based upon his actions towards C.M. The suspension remains part of C.M.'s permanent disciplinary record.

30. On information and belief, the District has never disciplined, reprimanded, retrained, reassigned, or otherwise sanctioned Defendant Stover for failing to intervene in the assault or for issuing the "Fight Club" instruction. The District's failure to act ratified his conduct.

**The Bullying and the District's Deliberate Indifference**

31. Immediately after C.M. reported the assault, and continuing to the present day, C.M. has been subjected to repeated and escalating bullying, harassment, intimidation, and threats by other students at Jackson Senior High School, which includes friends of the attacking student. That conduct includes physical intimidation, threats of violence, social exclusion, and physical contact.

32. That conduct is "bullying" within the meaning of RSMo § 160.775 because it is repetitive and substantially likely to be repeated and has caused C.M. to reasonably fear for his physical safety and has substantially interfered with his educational performance, opportunities, and benefits.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

33. Instead of intervening to stop the bullying and to protect C.M., the District — and the Defendant Stover in particular — has taken no action to stop the bullying or to discipline the students responsible, and has failed to comply with the mandatory procedures required by RSMo § 160.775.

34. RSMo § 160.775 requires the District to adopt, publicize, and enforce a written anti-bullying policy that, among other requirements, mandates that any District employee who witnesses an incident of bullying report it to the designated recipient within two school days; requires the principal or the principal's designee to begin an investigation within two school days of receiving a report and to complete that investigation within ten school days; prohibits retaliation against any student who reports bullying; requires the policy to state consequences for bullying; and requires the District to provide support for victims of bullying. The obligations imposed by RSMo § 160.775 and by the District's own adopted policy are mandatory and ministerial, and leave no discretion to the District's employees or administrators.

35. The District has failed to comply with each of those requirements. Upon information and belief, the District did not begin an actual investigation within two school days of C.M.'s reports; did not complete any investigation within ten school days; did not notify C.M. or his parents of the results of any investigation; did not impose any consequence on the students who bullied C.M.; did not take reasonable steps to separate C.M. from those students; and took no action to protect C.M. from retaliation for reporting.

**The 2026–2027 School Year: Reassignment and Continued Indifference**

36. At the beginning of the 2026–2027 school year, the District assigned Defendant Stover to supervise a free period attended by C.M. and by one or more of the students who had been bullying him. The District thereby placed the teacher who had permitted C.M. to be beaten

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

and who had directed that the assault be concealed in a position of authority over C.M., alongside the students who were actively harassing him.

37. C.M. and his parents immediately reported that assignment to the District and objected to it.

38. In response, the District represented to C.M.'s parents that Defendant Stover would not be involved with C.M. in any way moving forward.

39. Notwithstanding that representation, C.M. continues to be bullied and harassed at school, and the District has taken no effective action to stop it. The District's representation that Stover would no longer be involved with C.M. has proven meaningless, and the District's continuing failure to act has left C.M. exposed to ongoing harm.

**The District's Policies, Practices, and Customs**

40. On information and belief, the conduct described above was undertaken pursuant to, and was the product of, the District's policies, practices, and customs, including: (a) a policy, practice, or custom of discouraging the reporting of student-on-student violence and of concealing such incidents from parents, from other staff, from the District's own administration, and from law enforcement; (b) a policy, practice, or custom of treating victims of unprovoked assaults as willing participants in a "fight" and of imposing discipline on victims who report; (c) a policy, practice, or custom of failing to investigate, or of conducting sham investigations of, reports of student-on-student violence and bullying; (d) a policy, practice, or custom of failing to discipline students who commit acts of violence or who bully; and (e) a policy, practice, or custom of failing to protect students who report that they are being victimized.

41. On information and belief, the District has failed to train and to supervise its teachers, administrators, and staff concerning their obligations under RSMo §§ 160.261 and

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

160.775 and under the District's own written policies, and the District has been deliberately indifferent to the obvious need for such training. The need to train teachers regarding the duty to intervene in and to report student-on-student violence is obvious, and the failure to provide such training caused the constitutional and statutory violations alleged here.

42. On information and belief, the District's failure to act was caused by and ratified by the District's final policymakers, including Defendant Dr. Keenan Kinder and the District's Board of Education, who knew of the assault, of Defendant Stover's "Fight Club" instruction, and of the continuing bullying of C.M., and who nonetheless took no corrective action and imposed no discipline on Defendant Stover or on the students who bullied C.M.

**Plaintiffs' Injuries**

43. As a direct and proximate result of the conduct of Defendants, Plaintiff C.M. has suffered and continues to suffer permanent scarring on his body; substantial emotional and psychological injury, including anxiety, depression, humiliation, fear, sleep disturbance, and post-traumatic symptoms; and the loss of educational opportunity and the benefits of the educational program for which he is entitled to attend. C.M. has required and will continue to require medical, psychiatric, and psychological treatment, and has incurred and will continue to incur expenses for that treatment.

44. As a further direct and proximate result, Plaintiffs V.A. and C.M.S.. have incurred and are obligated to pay medical, hospital, psychiatric, and psychological expenses for the care and treatment of their minor son, and have suffered their own emotional distress and the loss of the normal parent-child relationship.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

## IV. ALLEGATIONS AVOIDING SOVEREIGN AND OFFICIAL IMMUNITY

45. This matter is filed in state court because Missouri circuit courts have concurrent jurisdiction over § 1983 claims. *Duvall v. Lawrence*, 86 S.W.3d 74 (Mo. App. E.D. 2002).

46. Counts I through V are federal claims. Missouri's sovereign immunity statute, RSMo § 537.600, limits the liability of public entities "in tort" under Missouri law. It does not, and under the Supremacy Clause of the United States Constitution, Article VI, clause 2, it cannot, immunize a Missouri political subdivision from liability for the violation of federal constitutional and statutory rights under 42 U.S.C. § 1983. No provision of Missouri law may be interposed as a defense to a § 1983 claim.

47. The District is a political subdivision of the State of Missouri, not an arm of the State of Missouri. RSMo § 162.875. The District is therefore not entitled to the Eleventh Amendment immunity of the State. It is a "person" within the meaning of 42 U.S.C. § 1983 and is subject to suit under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

48. With respect to Count VI (negligent supervision, retention, and failure to supervise) and Count VII (negligence per se), the District has waived its statutory sovereign immunity to the extent of the coverage of liability insurance it has purchased with public funds and/or of any self-insurance plan it has adopted, RSMo § 537.610.1. On information and belief, the District has purchased a policy or policies of general liability, errors and omissions, educators' legal liability, and/or casualty insurance from its own funds, through the action of its Board of Education, with Missouri Public Entity Risk Management Fund ("MOPERM") or some other unknown commercial insurer, and that policy or policies provide coverage for the claims asserted in Counts VIII and IX, including coverage for the negligent supervision of students and for injuries arising out of school operations. On information and belief, the District has also adopted a self-insurance

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

plan within the meaning of RSMo § 537.610.1. The particulars of that insurance are uniquely within the District's possession, custody, and control, are not public, and are not available to Plaintiffs except through discovery. Plaintiffs specifically plead the existence and applicability of that coverage as required, and will promptly seek discovery of the policy and any self-insurance plan.

49. Plaintiffs do not seek an award of punitive damages against Defendant Jackson R-2 School District, and no such award is requested, consistent with RSMo § 537.610.3 and *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

50. No claim is asserted against the State of Missouri, against any agency of the State of Missouri, or against any State official acting in a state capacity. Nothing in this Petition seeks the recovery of money damages from the public treasury of the State of Missouri.

51. The doctrine of official immunity does not protect the District. Official immunity is a defense personal to individual public employees and is unavailable to a political subdivision sued in its own name. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443 (Mo. banc 1986).

52. The doctrine of official immunity does not protect Defendant Stover. The duties that Defendant Stover breached — the duty to supervise the students in his classroom, the duty to intervene to stop an assault occurring in his presence, the duty to obtain medical assistance for an injured student, and the mandatory reporting duties imposed by RSMo §§ 160.261 and 160.775 and by the District's own written policies — were ministerial, mandatory, and non-discretionary. A public employee is not entitled to official immunity for the breach of a ministerial duty. Alternatively, and in any event, official immunity is unavailable to an employee who acts in bad faith or with malice, and Defendant Stover's conduct in directing the students to conceal the assault was undertaken in bad faith and with malice.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

53. To the extent that the Court concludes that any state-law claim requires further factual allegations to establish the absence of immunity, Plaintiffs request leave to amend, and Plaintiffs pray for limited discovery directed to the existence, terms, and coverage of the District's liability insurance and self-insurance arrangements.

**COUNT I**

**VIOLATION OF 42 U.S.C. § 1983 — DEPRIVATION OF THE RIGHT TO SUBSTANTIVE DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT (STATE-CREATED DANGER) — AGAINST DEFENDANT LONNY STOVER, INDIVIDUALLY**

54. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 53 above as though fully set forth herein.

55. While the Fourteenth Amendment generally does not impose upon the State a duty to protect an individual from harm inflicted by a private actor, *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Eighth Circuit recognizes an exception to that rule where the State affirmatively creates or enhances the danger to which the plaintiff is exposed. *Fields v. Abbott*, 652 F.3d 886, 890–91 (8th Cir. 2011); *Montgomery v. City of Ames*, 749 F.3d 689, 694–95 (8th Cir. 2014).

56. To state a claim under that exception, a plaintiff must show that (1) the plaintiff was a member of a limited, precisely definable group; (2) the defendant's conduct put the plaintiff at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to the defendant; (4) the defendant acted recklessly in conscious disregard of that risk; and (5) the conduct, when viewed in total, shocks the conscience. *Montgomery*, 749 F.3d at 694–95; *Fields*, 652 F.3d at 890–91.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

57. C.M. was a member of a limited, precisely definable group. He was one of the small number of minor students assigned to Defendant Stover's classroom for that class period, and he was the particular student who was attacked. Defendant Stover exercised direct, custodial authority over that group and over C.M. by virtue of state law, District policy, and his assignment as the supervising teacher.

58. Defendant Stover's conduct put C.M. at significant risk of serious, immediate, and proximate harm. The attack was occurring in Defendant Stover's presence. A teacher who stands by while a minor student is beaten in his own classroom, and who neither intervenes nor summons help, has left that student wholly without the protection that the teacher's presence was supposed to provide.

59. The risk was obvious and actually known to Defendant Stover, because the assault occurred in his plain view and because he was the adult charged with supervising the students in that room.

60. Defendant Stover acted recklessly in conscious disregard of that risk. He took no action whatsoever to protect C.M., to stop the attack, or to obtain help for him, although he was physically present, able to act, and obligated to act.

61. Defendant Stover then affirmatively enhanced the danger to C.M. He instructed C.M. and the perpetrating student that they were not to report the assault to anyone, telling them that "what happens in Fight Club stays in Fight Club." That instruction attempted to suppress the reporting of the assault, obstruct its investigation, delay C.M.'s medical and psychological care, insulate the student who attacked C.M. from discipline and from law enforcement referral, it permitted C.M. to remain in the presence of and in proximity to the attacking student and others, and emboldened C.M.'s attacker and harassers to continue to target him.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

62. The conduct of Defendant Stover, viewed in total, shocks the conscience. A public school teacher is entrusted with the physical safety of children whose attendance is compelled by law, and who are, as a practical matter, unable to protect themselves or to leave. A teacher who watches a child be beaten in his own classroom, does nothing, and then orders him to keep quiet so that the beating will not be reported or investigated, engages in conduct that is so egregious as to be conscience-shocking. The deliberate quality of the conduct — the calculated instruction to conceal, issued to conceal the teacher's own default — goes far beyond negligence, gross negligence, or a mere failure to act, and demonstrates at minimum deliberate indifference to an obvious risk of serious harm to C.M.

63. Defendant Stover acted under color of state law at all relevant times, because he acted pursuant to the authority granted to him by Missouri law, by the District's policies, and by his position as a public school teacher.

64. As a direct and proximate result of Defendant Stover's conduct, C.M. suffered the injuries and damages set forth above.

65. Defendant Stover is not entitled to qualified immunity, because the constitutional right he violated was clearly established at the time of the violation: it has been clearly established in the Eighth Circuit since at least 2011 that state actors may not affirmatively create or enhance the danger to a person in their charge and then permit that person to suffer serious harm. *Fields v. Abbott*, 652 F.3d 886 (8th Cir. 2011); *Montgomery v. City of Ames*, 749 F.3d 689 (8th Cir. 2014). In addition, the rights to be free from retaliation for protected speech and to be free from a teacher's order directing the concealment of a crime committed against a student were also clearly established.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

## COUNT II

## VIOLATION OF 42 U.S.C. § 1983 — DEPRIVATION OF THE RIGHT TO SUBSTANTIVE DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT AND *MONELL* LIABILITY — AGAINST DEFENDANT JACKSON R-2 SCHOOL DISTRICT

66. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 65 above as though fully set forth herein.

67. Count II is pleaded against the District under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1989). C.M.'s injuries were caused by unconstitutional conduct of District employees, including the conduct described in Count I, and were caused by, and flowed from, the District's official policies, its widespread practices and customs, its failure to train and to supervise, and its ratification of the conduct of its employees and of the students who attacked and harassed C.M.

68. Official Policy and Custom. The District's policy, practice, and custom of discouraging the reporting of student-on-student violence — as evidenced by Defendant Stover's "Fight Club" instruction and by the District's failure to correct or to discipline that conduct — directly caused C.M. to be deprived of the protection of law and of the prompt reporting and investigation to which he was entitled. The District's policy, practice, and custom of treating the victims of unprovoked assaults as participants in a "fight" caused C.M. to be suspended for having reported the assault. The District's policy, practice, and custom of failing to investigate and to discipline students who bully and assault caused the continued harassment and harm to C.M.

69. The District's practices and customs described above are so widespread, so persistent, and so well settled as to constitute the District's actual custom, even if they are not formally reduced to writing, and were the moving force behind the violations of C.M.'s constitutional rights.

Case: 1:26-cv-00280 Doc. #: 3 Filed: 11/18/26 Page: 20 of 47 PageID #: 24

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

70. Failure to Train and to Supervise. The District's failure to train and to supervise its teachers and administrators with respect to the duty to supervise students, to intervene in student-on-student violence, to report acts of school violence under RSMo § 160.261, to comply with its obligations under RSMo § 160.775 and its own anti-bullying and discipline policies, and to refrain from retaliating against students who report, evidences a deliberate indifference to the constitutional rights of the District's students. The need to train teachers on these obligations is obvious, and the failure to do so caused the specific violations alleged here. That the District ignored so obvious a need for training is itself evidence of the District's deliberate indifference.

71. Ratification. The District's final policymakers, including Defendant Dr. Keenan Kinder and the District's Board of Education, knew of the assault, of Defendant Stover's failure to intervene, of his "Fight Club" instruction, of the suspension of C.M., and of the continuing bullying of C.M., and yet took no action. By failing to discipline Defendant Stover, by retaining him, by later placing him in a supervisory position over C.M., and by failing to discipline C.M.'s harassers, the District's final policymakers ratified the unconstitutional conduct of their subordinates and adopted it as the District's own.

72. As a direct and proximate result of the District's policies, customs, failures to train and supervise, and ratification, C.M. suffered the injuries and damages set forth above.

## COUNT III

## VIOLATION OF 42 U.S.C. § 1983 — DEPRIVATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT (GAG ORDER AND RETALIATION) — AGAINST DEFENDANTS LONNY STOVER AND JACKSON R-2 SCHOOL DISTRICT

73. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 72 above as though fully set forth herein.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

74. Students enrolled in public schools retain their First Amendment rights. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). School officials may restrict or punish student speech only where the speech would substantially and materially disrupt the work and discipline of the school or where the restriction is reasonably related to a legitimate pedagogical concern.

75. C.M.'s report of a violent assault committed against him, his reports of the bullying that followed, and his testimony about those events were speech on a matter of significant public concern. Reporting a violent crime committed in a public school to school officials, to parents, and to law enforcement is protected by the First Amendment.

76. Defendant Stover's instruction that the students were not to report the assault to anyone, and that "what happens in Fight Club stays in Fight Club," operated as a prior restraint and a gag order on student speech. That order was not justified by any substantial and material disruption of the school's work, and was not reasonably related to any legitimate pedagogical purpose. It was instead intended to conceal Defendant Stover's failure to supervise and to prevent the assault from being reported to parents, to police, and to the District itself.

77. The District then suspended C.M. because he had reported the assault. The District's suspension of C.M. — the victim — for having spoken about the assault and for refusing to remain silent as instructed, and its continued failure to protect him after he spoke, constitutes retaliation against C.M. for the exercise of his First Amendment rights.

78. The District's retaliatory conduct was undertaken pursuant to, and was the product of, the District's policies, practices, and customs of concealing student-on-student violence and of disciplining students who report it, and of the District's failure to train and to supervise its employees with respect to students' First Amendment rights, all of which is attributable to the

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

District under *Monell*. The conduct of Defendant Stover, and the District's ratification of it, directly caused the deprivation of C.M.'s First Amendment rights.

79. Defendants' conduct caused C.M. to suffer the loss of his constitutionally protected speech and the punishment of suspension, along with the injuries and damages set forth above.

80. The First Amendment rights violated herein were clearly established in the Eighth Circuit and under United States Supreme Court precedent at the time of the violation, and Defendants are not entitled to qualified immunity.

**COUNT IV**

**VIOLATION OF 42 U.S.C. § 1983 — DEPRIVATION OF THE RIGHT TO PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (WRONGFUL SUSPENSION) — AGAINST DEFENDANT JACKSON R-2 SCHOOL DISTRICT**

81. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 80 above as though fully set forth herein.

82. A student enrolled in a public school has a constitutionally protected property interest in his education and a liberty interest in his good name and reputation. *Goss v. Lopez*, 419 U.S. 565 (1975).

83. Under *Goss*, even for a suspension of ten school days or fewer, a student must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the school authorities have and an opportunity to present his side of the story. For longer suspensions, more formal procedures are required.

84. C.M. was suspended from school on the false premise that he was a willing participant in a "fight," and the suspension was imposed without the notice and the meaningful opportunity to be heard that the Fourteenth Amendment requires. The District did not provide C.M.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

or his parents with adequate written notice of the charges, did not identify the evidence or witnesses relied upon, and did not afford C.M. a meaningful opportunity to present his account before imposing discipline.

85. The suspension has been recorded in C.M.'s disciplinary record and has stigmatized him, has foreclosed educational opportunities, and has been used and will continue to be used against him. The suspension has thereby deprived C.M. of both a protected property interest and a protected liberty interest without due process of law.

86. The District's failure to provide due process was the product of the District's inadequate policies, its failure to train its administrators, and its widespread custom and practice of disciplining students without affording constitutionally adequate process, and is attributable to the District under *Monell*.

87. As a direct and proximate result, C.M. suffered the injuries and damages set forth above.

## COUNT V

## VIOLATION OF 42 U.S.C. § 1983 — PROSPECTIVE INJUNCTIVE RELIEF TO REMEDY ONGOING VIOLATIONS OF FEDERAL LAW — AGAINST DEFENDANT DR. KEENAN KINDER, IN HIS OFFICIAL CAPACITY, AND AGAINST DEFENDANT JACKSON R-2 SCHOOL DISTRICT

88. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 87 above as though fully set forth herein.

89. The violations of federal law alleged herein are continuing. C.M. remains a student in the District, remains subject to bullying and harassment by other students, remains in a school in which the teacher who permitted him to be beaten and who ordered the assault concealed

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

continues to be employed, and remains subject to the District's policies, practices, and customs of concealment and indifference.

90. A suit for prospective injunctive relief to remedy an ongoing violation of federal law is not barred by sovereign immunity. *Ex parte Young*, 209 U.S. 123 (1908). Defendant Dr. Keenan Kinder, as the District's final policymaker, and the District itself, are proper defendants for the prospective relief requested.

91. Plaintiffs have no adequate remedy at law to prevent the continuation of the harm, and C.M. will suffer irreparable injury absent injunctive relief.

**COUNT VI**

**NEGLIGENT SUPERVISION, NEGLIGENT RETENTION, AND NEGLIGENT FAILURE TO SUPERVISE AND TO PROTECT — AGAINST DEFENDANTS JACKSON R-2 SCHOOL DISTRICT AND LONNY STOVER**

92. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 91 above as though fully set forth herein.

93. At all relevant times, Defendants owed C.M. a duty of reasonable care. That duty arose from the compulsory attendance laws of the State of Missouri, the *in loco parentis* relationship between the District and its students, the District's undertaking to supervise and to protect the students enrolled at Jackson Senior High School, the District's own written policies and procedures, and the mandatory duties imposed by RSMo §§ 160.261 and 160.775.

94. That duty required Defendants to exercise reasonable care to supervise the students in Defendant Stover's classroom, to protect C.M. from foreseeable harm, to intervene in and to stop an assault occurring in a teacher's presence, to obtain medical assistance for an injured student, to report acts of school violence as required by law, to refrain from concealing such acts,

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

to investigate reports of bullying, to protect C.M. from bullying and retaliation, and to refrain from imposing discipline upon a student for reporting that he was the victim of a crime.

95. Defendants breached those duties in the manner set forth above, including by Defendant Stover's failure to intervene in or to stop the assault, his failure to obtain medical assistance for C.M., his instruction to the students to conceal the assault, and the District's failure to investigate and to discipline, its retention of Defendant Stover, its placement of Defendant Stover in a supervisory role over C.M. after promising that it would not, and its continuing failure to protect C.M. from bullying.

96. The harm to C.M. was foreseeable. It is foreseeable that a high school student will be assaulted by a fellow student if his teacher does not supervise the classroom, and it is foreseeable that the concealment of an assault, the failure to discipline the aggressor at the time of the assault, and the failure to investigate and to address reports of bullying will result in further violence and harassment.

97. As a direct and proximate result of Defendants' negligence, C.M. suffered the injuries and damages set forth above.

98. With respect to Defendant Jackson R-2 School District, this Count is brought against a political subdivision of the State of Missouri. The District has waived sovereign immunity as to this Count to the extent of the coverage of the liability insurance it has purchased and/or of the self-insurance plan it has adopted, and to the extent provided in RSMo § 537.610.1, as set forth above. To the extent the District contends that its exposure is limited by RSMo § 537.610.2, Plaintiffs do not concede the applicability of any statutory cap to the claims asserted in this Count and expressly reserve the right to contest any such cap.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

## COUNT VII

## NEGLIGENCE PER SE — VIOLATION OF RSMO §§ 160.261 AND 160.775 AND OF THE DISTRICT'S MANDATORY WRITTEN POLICIES ADOPTED THEREUNDER — AGAINST DEFENDANTS JACKSON R-2 SCHOOL DISTRICT AND LONNY STOVER

99. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 98 above as though fully set forth herein.

100. RSMo § 160.775 requires every Missouri school district to adopt a written anti-bullying policy and specifies mandatory components of that policy, including: (a) that any employee who witnesses an incident of bullying must report it to the designated recipient within two school days; (b) that the principal or the principal's designee must begin an investigation within two school days of receiving a report and must complete the investigation within ten school days; (c) that the policy must prohibit and address retaliation against any person who reports bullying; (d) that the policy must state the consequences of bullying; and (e) that the policy must address support for the victims of bullying.

101. RSMo § 160.261 requires the District's written discipline policy to address acts of school violence and requires District administrators to report acts of school violence to teachers and to other employees with a need to know and to report specified serious offenses to the appropriate law enforcement agency as soon as reasonably practical.

102. Those statutes, and the District's own written policies adopted pursuant to them, were enacted and adopted for the protection of students such as C.M. — the class of persons to which C.M. belongs — and were intended to prevent precisely the type of harm that C.M. suffered.

103. Defendants violated those statutes and policies in the manner set forth above, including by failing to intervene in the assault, failing to report the assault to law enforcement and to other staff, affirmatively directing students to conceal the assault, failing to investigate C.M.'s

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

reports of bullying within the time required, failing to complete any investigation within the time required, failing to impose any consequence upon C.M.'s harassers, and failing to take any action to protect C.M. from retaliation.

104. Defendants' unexcused violations of these mandatory statutory and policy duties constitute negligence *per se*, and that negligence was the direct and proximate cause of C.M.'s injuries and damages.

105. The sovereign-immunity allegations set forth above apply equally to this Count.

**COUNT VIII**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — AGAINST DEFENDANTS LONNY STOVER AND JACKSON R-2 SCHOOL DISTRICT**

106. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 105 above as though fully set forth herein.

107. Defendants' conduct was extreme and outrageous. It went beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community. A public school teacher entrusted with the custody and safety of minor children who stands by while one of those children is beaten in his classroom, who refuses to intervene, who then orders the children to conceal the beating so that it will not be reported to their parents or to law enforcement, and who does so in order to conceal his own failure, has engaged in conduct that is extreme and outrageous as a matter of law.

108. The District's conduct in then suspending the victim for reporting the assault, and in then failing over a period of months — after repeated reports by C.M. and his parents — to investigate, to discipline the harassers, to separate C.M. from the students who were attacking him, or to take any step at all to protect him, and in assigning the same teacher to supervise C.M. again

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

after promising that it would not, was likewise extreme and outrageous. The District knew of C.M.'s particular vulnerability and of his continuing distress, and it disregarded it.

109. Defendants intended to inflict severe emotional distress upon C.M., or knew or should have known that severe emotional distress would result, and acted with reckless disregard of that likelihood.

110. As a direct and proximate result, C.M. suffered severe emotional distress, including anxiety, depression, humiliation, fear, sleep disturbance, and post-traumatic symptoms, requiring psychological and psychiatric treatment. That distress is severe and is not the sort of transient distress that accompanies ordinary insults, indignities, or petty oppressions.

111. With respect to the District, the sovereign-immunity allegations set forth above apply equally to this Count. Plaintiffs do not seek punitive damages against the District on this Count.

## COUNT IX

## PARENTAL CLAIM FOR MEDICAL EXPENSES, LOSS OF SERVICES, AND DERIVATIVE DAMAGES — AGAINST ALL DEFENDANTS — PLAINTIFFS V.A. AND C.M.S.

112. Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 111 above as though fully set forth herein.

113. Plaintiffs V.A. and C.M.S. are the parents (C.M.S. is his natural parent) of Plaintiff C.M. and are legally obligated to provide for his support and care.

114. As a direct and proximate result of the conduct of Defendants, V.A. and C.M.S. have incurred and will incur medical, hospital, psychiatric, and psychological expenses for the care and treatment of their minor son, have lost and will lose the services, assistance, and

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

companionship of their son, and have themselves suffered emotional distress and the loss of the normal parent-child relationship caused by their son's injuries.

115. The sovereign-immunity allegations set forth above apply equally to this Count.

**PRAYER FOR RELIEF**

WHEREFORE, having stated their claims, Plaintiffs respectfully pray for judgment against Defendants as follows:

116. On Counts I through IX, for compensatory damages for the physical injuries, physical pain and suffering, emotional and psychological injury, past and future medical and psychological expenses, loss of educational opportunity, and other consequential damages sustained by Plaintiff C.M., in an amount to be proven at trial and in excess of the jurisdictional minimum of this Court;

117. On Count I, for nominal damages[1] against Defendant Lonny Stover, individually, in an amount sufficient to punish and to deter;

118. On Counts VI, VII, VIII, and IX, for compensatory damages sustained by Plaintiffs M.D. and R.D., jointly and severally against the Defendants liable thereon;

119. On Count V, for a permanent injunction ordering Defendant Jackson R-2 School District and Defendant Dr. Keenan Kinder to: (a) immediately identify all students who have bullied, threatened, or harassed C.M. and take prompt and effective steps to separate C.M. from those students in every class, activity, and setting; (b) ensure that Defendant Lonny Stover has no supervisory authority over C.M. and no contact with C.M. in any school setting; (c) conduct a prompt, thorough, and impartial investigation of all of C.M.'s reports of bullying, complete that

[1] A Request for Punitive Damages are expected to be filed at a later date against Defendant Stover.

Electronically Filed - Cape Girardeau (Jackson) - October 12, 2026 - 01:56 PM

investigation within the time required by RSMo § 160.775 and the District's policy, and report the results in writing to C.M.'s parents; (d) adopt, publish, and enforce a policy that prohibits retaliation against students who report bullying or violence, and that states the consequences for bullying; (e) provide mandatory training to all District teachers, administrators, and staff on their obligations under RSMo §§ 160.261 and 160.775, on the duty to intervene in student-on-student violence, and on students' First Amendment rights; (f) provide C.M. with the counseling and support required by RSMo § 160.775; and (g) expunge the wrongful suspension of C.M. from his disciplinary record;

120. On Counts I through V, for an award of Plaintiffs' reasonable attorney's fees, expert fees, and costs incurred in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

121. For pre-judgment and post-judgment interest as allowed by law;

122. For declaratory relief as the Court deems appropriate; and

123. For such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY on all issues triable to a jury.**

Respectfully submitted,

RADEFELD LAW GROUP, LLC.

By: *s/ Matthew A. Radefeld*
MATTHEW A. RADEFELD (#52288MO)
Attorneys for Plaintiffs
7711 Bonhomme Ave., Suite 710
Clayton, Missouri 63105
Phone: (314) 341-0374
Email: matthew@radlaw.org